J. S91005/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :     IN THE SUPERIOR COURT OF
:          PENNSYLVANIA
           v.          :
:
PETER JOHN OLDFIELD,       :        No. 1134 MDA 2016
:
         Appellant    :

Appeal from the Order Entered November 6, 2015,
in the Court of Common Pleas of York County
Criminal Division at No. CP-67-CR-0005960-2013

BEFORE:  FORD ELLIOTT, P.J.E., RANSOM, J. AND STEVENS, P.J.E.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED DECEMBER 30, 2016**

Peter John Oldfield appeals from the November 6, 2015 order entered in the Court of Common Pleas of York County that denied his motion for reconsideration of denial of motion to dismiss criminal conviction based on a violation of Pa.R.Crim.P. 704 for the trial court's failure to impose sentence within 90 days of appellant's entry of his guilty plea.  We affirm.

The record reflects that following a traffic stop on July 20, 2013, appellant was charged with driving under the influence[1] ("DUI"), possession

---

* Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S.A. § 3802(d)(2).

of a controlled substance (cocaine),[2] and failing to signal.[3] Because appellant was on parole in connection with a case docketed at CP-67-CR-161-2001 at the time of his arrest, a parole detainer was lodged against him. As a result, on July 23, 2013, officials transported appellant to the state correctional institution ("SCI") at Camp Hill. The record further reflects that although appellant initially opted to proceed *pro se*, the public defender's office entered its appearance on appellant's behalf on December 13, 2013.

On January 17, 2014, appellant pled guilty to DUI in return for an evaluation for eligibility to participate in the state intermediate punishment program ("SIPP"), and the prosecution *nolle prossed* the remaining charges. Appellant was then imprisoned at SCI Smithfield. That facility, however, failed to conduct the SIPP evaluation, and appellant seemingly "slipped through the cracks." (Notes of testimony, 12/17/14 at 2.)

The record further reflects that appellant's case was initially assigned to an attorney at the public defender's office, but as a result of personnel changes, appellant's case was reassigned to another attorney; that appellant wrote a letter to the public defender's office in June of 2014 concerning the status of his sentencing; and that "nothing was done after that." (*Id.* at 2-3.) In late October or early November 2014, appellant's case was again

---

[2] 35 P.S. § 780-113(a)(16).

[3] 75 Pa.C.S.A. § 3334(a).

reassigned due to personnel changes, at which time newly assigned counsel "immediately recognized that there were issues with the fact that [appellant had] not been sentenced." (*Id.* at 3.)

On November 6, 2014, appellant's counsel filed a motion for appellant's transfer from SCI Smithfield to the York County Prison and for imposition of sentence. On that same date, the parole board granted appellant re-parole in the case docketed at CP-67-CR-161-2001 contingent, according to appellant, on a urine screen which, according to appellant, he submitted after being notified of his re-parole.[4] The record further reflects that on November 10, 2014, the trial court entered an order that scheduled sentencing for December 17, 2014, and ordered appellant to be transferred from SCI Smithfield to the York County Prison. The record fails to reflect the date on which appellant's transport occurred, but appellant states in his brief that in early November 2014, an attorney with the public defender's office contacted the trial court to schedule a status hearing and appellant "was

---

[4] The certified record before us contains the parole board's decision to re-parole appellant on November 6, 2014, but fails to indicate that re-parole was dependent on the results of a urine screen. (Notes of testimony, 10/5/15 at defendant's exhibit 1.) The record also fails to reflect that appellant submitted urine prior to being transported to the York County Prison per the trial court's November 10, 2014 transport order. The record does contain an "inmate's request to staff member form" dated January 29, 2015, wherein appellant inquired as to his parole date. (*Id.* at defendant's exhibit 2.) The staff member's written response, dated February 2, 2015, was, "[w]hen I receive your urine results, you'll sign your release order. Effective the day after that, you'll start your new sentence." (*Id.*)

suddenly transported from state prison to the York County Prison." (Appellant's brief at 9.)

At the December 17, 2014 sentencing hearing, appellant moved for dismissal of the DUI charge that he pled guilty to, based on a violation of his speedy-sentencing rights under Pa.R.Crim.P. 704. We note that a review of the December 17, 2014 hearing transcript reflects that appellant did not inform the trial court that the parole board granted him re-parole on November 6, 2014, and that his re-parole was dependent on the results of a urine screen, the results of which appellant claims he was awaiting. The record further reflects that following oral argument at the December 17, 2014 hearing, the trial court denied appellant's motion to dismiss on Rule 704 grounds, after finding that the sentencing delay was not attributable to the Commonwealth or the trial court, but rather, to SCI, and that appellant failed to show that the delay resulted in any prejudice. In fact, the hearing transcript reveals that appellant advanced no argument regarding prejudice. The trial court then rescheduled sentencing to January 26, 2015, so that it could have the benefit of a pre-sentence investigation report. Appellant remained incarcerated at the York County Prison as he awaited his January 26, 2015 sentencing.

At the January 26, 2015 sentencing hearing, appellant's counsel confirmed that appellant was sentenced and serving time on the parole violation, as well as a case docketed at 2401-CR-2012 in which appellant

was sentenced to 17 months to 5 years of incarceration. (Notes of testimony, 1/26/15 at 2-3.) We note that a review of this sentencing hearing transcript also reveals that appellant did not inform the trial court that the parole board granted re-parole on November 6, 2014, and that, as appellant claims, his re-parole was dependent on a urine screen of which he was awaiting results. At the conclusion of the sentencing hearing, the trial court sentenced appellant to 129 days to 23 months of imprisonment, less time served (552 days), to run concurrent to the sentence imposed for appellant's parole violation, followed by a consecutive term of supervision of 3 years plus 1 month.

The record further reflects that the public defender did not file post-sentence motions or a direct appeal on appellant's behalf. On February 5, 2015, however, appellant filed a ***pro se*** motion for modification of sentence. Because the public defender's office still represented appellant, the trial court refused to accept the ***pro se*** filing. On May 6, 2015, appellant then filed a ***pro se*** Post Conviction Relief Act[5] petition. The trial court appointed counsel, and counsel filed an amended petition. On July 28, 2015, the trial court entered an order that reinstated appellant's appeal rights. Appellant then filed a post-sentence motion for reconsideration of the trial court's order denying appellant's motion to dismiss based on a Rule 704 violation, alleging, among other things:

---

[5] 42 Pa.C.S.A. §§ 9541-9546.

15. The basis for the 12-month delay in sentencing was not due to [appellant's] error, and [appellant] repeatedly wrote to counsel to assert his right to be sentenced in a timely fashion. Because [appellant] had been forgotten about by the Court, the Commonwealth, and his counsel, his parole in another case was delayed by three months. The parole delay had the effect of delaying the start of his sentence in this and other matters, and has delayed [appellant's] release from incarceration in all of his matters.

16. The result of the delayed parole was not apparent to [appellant] on December 17, 2014, when he appeared before this Court and moved for dismissal of the charges. The prejudice to [appellant] was not apparent until after his return to state prison following his January 26, 2015 Sentencing Hearing.

Appellant's Post-Sentence Motion for Reconsideration of Denial of Motion to Dismiss, 8/28/15 at 3-4, ¶¶ 15-16.

On October 5, 2015, the trial court[6] held a hearing on the motion. On November 6, 2015, the trial court denied appellant's motion. On November 19, 2015, appellant filed a notice of appeal to this court.

---

[6] The record reflects that the Honorable Thomas H. Kelley, VI, presided over the December 15, 2014 and January 26, 2015 proceedings. The record further reflects that the Honorable Craig T. Trebilcock presided over the October 5, 2015 motion for reconsideration. Following Judge Trebilcock's deployment by the United States Army in November 2015, the Honorable Harry M. Ness was assigned to appellant's case. Judge Ness wrote and filed the Rule 1925(a) opinion in this appeal, which incorporated his February 5, 2015 Rule 1925(a) opinion and Judge Trebilcock's November 6, 2015 order and opinion.

Appellant complied with the trial court's concise statement order, and the trial court filed a Pa.R.A.P. 1925(a) opinion on February 5, 2016.

By order dated May 19, 2016, however, this court dismissed appellant's appeal for failure to file a brief. *Commonwealth v. Oldfield*, No. 2029 MDA 2015, order (Pa.Super. filed May 19, 2016.) On June 13, 2016, appellant filed a petition to reinstate his appellate rights with the trial court. On June 16, 2016, the trial court reinstated appellant's appeal rights. Appellant then timely filed a notice of appeal to this court. Appellant complied with the trial court's concise statement order, and the trial court filed a Rule 1925(a) opinion that incorporated its February 5, 2016 Rule 1925(a) opinion, as well as the trial court's November 6, 2015 order denying appellant's motion to reconsider and accompanying opinion.

Appellant raises the following issue for our review:

> Whether the trial court erred in denying the Appellant's Post-Sentence Motion for Reconsideration of the Denial of Motion to Dismiss, erring in its conclusion that the Appellant's Sentencing Hearing was not delayed without good cause and that the Appellant was not prejudiced by the delay in sentencing?

Appellant's brief at 3.

Pa.R.Crim.P. 704 provides, in pertinent part:

> (A) **Time for Sentencing.**
>
> (1)   Except as provided by Rule 702(B), sentence in a court case shall ordinarily be imposed within 90

> days of conviction or the entry of a plea of guilty or nolo contendere.
>
> (2) When the date for sentencing in a court case must be delayed, for good cause shown, beyond the time limits set forth in this rule, the judge shall include in the record the specific time period for the extension.

Pa.R.Crim.P. 704(A)(1) and (2).

With respect to claims of untimely sentencing, it has been explained, as follows:

> The appropriate remedy for a violation of Pa.R.Crim.P. 1405 [now Pa.R.Crim.P. 704], is discharge. However, the remedy does not automatically apply whenever a defendant is sentenced more than [ninety] days after conviction without good cause. Instead, a violation of the [ninety-day] rule is only the first step toward determining whether the remedy of discharge is appropriate.
>
> . . . .
>
> [A] defendant who is sentenced in violation of Pa.R.Crim.P. 1405 [now Pa.R.Crim.P. 704], is entitled to a discharge only where the defendant can demonstrate that the delay in sentencing prejudiced him or her. . . . [T]o determine whether discharge is appropriate, the trial court should consider:
>
> (1) the length of the delay falling outside of [the Pa.R.Crim.P. [90-day-and-good-cause provisions]; (2) the reason for the improper delay; (3) the defendant's timely or untimely assertion of his rights; and (4) any resulting prejudice to the interests protected by his speedy trial and due process rights. Prejudice should

> not be presumed by the mere fact of an untimely sentence. Our approach has always been to determine whether there has in fact been prejudice, rather than to presume that prejudice exists. The court should examine the totality of the circumstances, as no one factor is necessary, dispositive, or of sufficient importance to prove a violation.

*Commonwealth v. Diaz*, 51 A.3d 884, 887 (Pa.Super. 2012) (citation omitted; brackets in original).

Here, with respect to the length of the delay, appellant pled guilty on January 17, 2014. The trial court imposed sentence on January 26, 2015, which was 284 days beyond the 90-day provision set forth in Rule 704. The sentencing delay, therefore, was significant.

With respect to the reason for the sentencing delay, appellant contends that it:

> was not due to the [appellant's] error, and [appellant] repeatedly[7] wrote to counsel to assert his right to be sentenced in a timely fashion. Because [appellant] had been forgotten about by the trial court, the Commonwealth, and his counsel, his parole release in another case was delayed by three months.

Appellant's brief at 11. Appellant fails to advance any argument that the sentencing delay resulted from inexcusable or intentionally dilatory conduct by the Commonwealth or the trial court which Rule 704 was meant to

---

[7] The record reflects that appellant wrote to counsel at the public defender's office once. (Notes of testimony, 12/17/14 at 3.)

ameliorate. **_See Diaz_**, 51 A.3d at 889 (reiterating that the underpinning of Rule 704 is to protect the accused from inexcusable or intentional delay on the part of the court or the Commonwealth, "the 'whim' or power of the state." (citation omitted)). Rather, appellant complains that the delay was not his fault and that the system essentially forgot about him. Although we do not condone the delay in appellant's sentencing, appellant's claim that the system forgot about him is insufficient to support discharge for a Rule 704 violation because it fails to implicate inexcusable or intentional delay on the part of the trial court or the Commonwealth. **_See id._**

With respect to appellant's timely or untimely assertion of his rights, the record reflects that appellant sent a letter to the public defender's office regarding the status of his sentencing in June 2014, which was approximately six months after he pled guilty.

Finally, with respect to prejudice, the December 17, 2014 sentencing transcript reveals that the trial court was not only cognizant of, but sympathetic to, the delay in appellant's sentencing. The record reflects that after defense counsel thoroughly informed the trial court of the delay, the trial court immediately suggested that it could impose a retroactive concurrent sentence. (Notes of testimony, 12/5/14 at 5.) Additionally, after finding that the delay was not attributable to the trial court or the Commonwealth, the trial court expressed its "default position" that it "sentence [appellant] concurrently or partially concurrently" to the other

sentences. (*Id.* at 6-8.) We note that the Commonwealth agreed with that remedy and stated that it "wouldn't have a problem running it concurrently[,] [g]iven everything that has happened in this case." (*Id.* at 8, 10.) Moreover, defense counsel informed the court that appellant was "hoping" that it would run a concurrent sentence. (*Id.* at 9.)

The record, therefore, reflects that the reason that the trial court imposed 129 days to 23 months of incarceration to run concurrent to the sentence imposed for the parole violation was to remediate any prejudice suffered by the Rule 704 violation. Appellant's argument that his approximate three-month incarceration in York County, which was caused by his delayed sentencing, caused the delay of his re-parole, as well as the delay of the date that he would have begun to serve his next sentence, because his county imprisonment took him out of the state system which resulted in appellant not knowing that he needed to re-submit urine for re-parole purposes necessarily assumes that appellant would have received the same sentence if he was sentenced within the 90-day period prescribed by Rule 704. The record, however, reveals that the trial court carefully considered the sentencing delay when it sentenced appellant to 129 days to 23 months to run concurrent to the sentence for the parole violation. Therefore, appellant has failed to establish prejudice because the argument he raises rests entirely on speculation. **See Diaz** 51 A.3d at 891-892 (holding that discharge is not warranted under Rule 704 where defendant's

claim of prejudice is speculative). Accordingly, dismissal under Rule 704 was not warranted.

Order affirmed.


Stevens, P.J.E. joins this Memorandum.

Ransom, J. concurs in the result.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/30/2016